UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

```
_____
                                       )
In re FIDDLER GONZALEZ &               )
RODRIGUEZ, P.S.C.                      )
                    Debtor.            )
                                       )
NOREEN WISCOVITCH-RENTAS, as           )
Chapter 7 Trustee                      )
                                       )
                    Plaintiff,         )
                                       )
             v.                        )      CIVIL ACTION
                                       )      NO. 19-01651-WGY
LIBERTY MUTUAL INSURANCE COMPANY,      )
AON RISK SOLUTIONS OF PUERTO RICO,     )
INC., JOSE ACOSTA-GRUBB, JOSE          )
JULIAN ALVAREZ, CHARLES A.             )
BIMBELA, PEDRO MANZANO-YATES,          )
EDUARDO NEGRON-NAVAS, RICARDO L.       )
ORTIZ-COLON, JOSE A. SILVA-COFRESI,    )
JOSE A. SOSA-LLORENS, VIVIAN REYES,    )
CONJUGAL PARTNERSHIP ACOSTA-REYES,     )
MARY DEAL, CONJUGAL PARTNERSHIP        )
ALVAREZ-DEAL, WALESKA MORA-ALDEBOL,    )
CONJUGAL PARTNERSHIP                   )
BIMBELA-ALDEBOL, CARMEN JUARBE,        )
CONJUGAL PARTNERSHIP                   )
MANZANO-JUARBE, EMILY AREAN,           )
CONJUGAL PARTNERSHIP AREAN-NEGRON,     )
MARIA SANTOS, CONJUGAL PARTNERSHIP     )
SANTOS-ORTIZ, JUAN C. PEREZ-OTERO,     )
JANE DOE, CONJUGAL PARTNERSHIP         )
PEREZ-DOE, JANET NAVARRETE,            )
CONJUGAL PARTNERSHIP                   )
SILVA-NAVARETTE, DIANA LOZANO,         )
CONJUGAL                               )
PARTNERSHIP SOSA-LOZANO, and MARIA     )
I. SANTOS-RIVERA                       )
                                       )
                    Defendants.        )
_____)
```

YOUNG, D.J.*                                        November 19, 2019

---

* Of the District of Massachusetts, sitting by designation.

**MEMORANDUM & ORDER**

**I.   INTRODUCTION**

These motions to compel arbitration arise from the bankruptcy proceeding of a Puerto Rico law firm, Fiddler, González & Rodríguez, P.S.C.  The firm's chapter 7 trustee has filed an adversary complaint against nine former directors and officers of the firm, some of whom now move to compel arbitration pursuant to an arbitration clause found in the firm's by-laws.  Because the arbitration clause does not bind the trustee with respect to creditor-derivative claims and, in any case, the clause by its own terms does not encompass any of the trustee's claims, the Court DENIES the motions to compel arbitration.

**A.   Factual Allegations**

Since this "motion to compel arbitration was made in connection with a motion to dismiss or stay," this Court "draw[s] the relevant facts from the operative complaint and the documents submitted to the district court in support of the motion to compel arbitration."  Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018).

The law firm Fiddler, González & Rodríguez, P.S.C. ("Fiddler"), a fixture of the Puerto Rican legal world for many decades, filed for bankruptcy in 2017 with $4,500,000 in debt.

Ch. 7 Trustee's Adv. Compl. Damages ("Adv. Compl.") ¶ 1, ECF No. 1-3. Noreen Wiscovitch-Rentas, Fiddler's court-appointed Chapter 7 trustee ("the Trustee"), blames Fiddler's "stark economic decline" on mismanagement by nine defendants in this case, who are former directors and officers of the firm ("D&O Defendants"). Id. ¶ 5.[1] The Trustee alleges that Fiddler's Managing Director, Pedro Manzano-Yates ("Manzano"), and others made a series of poor decisions that left the firm in financial distress by 2014, and then failed to take appropriate steps to right the firm's course. Id. ¶¶ 62-109.

Manzano resigned in February 2016, id. ¶ 110, and then "set up a competing firm with over $5,000,000 of Fiddler's business" with several other Fiddler refugees (whom the Trustee calls the "Manzano Group"), id. 3.[2] Following Manzano's resignation from Fiddler, Ricardo L. Ortiz-Colón ("Ortiz") was elected Managing Director of the firm. Id. ¶ 112. The Trustee alleges that

---

[1] The nine D&O Defendants named in the complaint are José Acosta Grubb, José Julián Álvarez, Charles A. Bimbela, Pedro J. Manzano Yates, Eduardo Negrón Navas, Ricardo L. Ortiz-Colón, Juan C. Pérez-Otero, José A. Silva Cofresí, and José A. Sosa-Lloréns.

[2] There is confusion in the adversary complaint regarding the precise members of the "Manzano Group." In one place the group is identified as Pedro Manzano-Yates, Jose Acosta-Grubb, Eduardo Negron-Navas, Jose A. Silva-Cofresi, and Jose A. Sosa-Llorens. See Adv. Compl. 3 n.2. Elsewhere, Manzano and Acosta are not included in the group while Juan C. Pérez-Otero suddenly appears. Id. ¶ 38. To make matters worse, count IX is directed against "Defendants Acosta, Negron, Silva and Sosa (the 'Manzano Group')" with no mention of Manzano or Pérez-Otero. Id. 52.

[3]

Ortiz and his new allies (the "Closeout Group"³) irresponsibly allowed the already-imperiled firm finally to crash.  Id. ¶¶ 112-124.  When the adversary complaint was filed in May 2019, two years after the initial petition, the estate had $7,650,000 in claims filed against it.  Id. ¶ 125.

In addition to alleging various poor business decisions, the Trustee alleges that the nine D&O Defendants caused the insolvent Fiddler to "waste assets" by making economically unreasonable transfers.  Id. ¶ 127.  These transfers include authorizing Fiddler to buy back about $1,200,000 of worthless stock from retired shareholders, id. ¶ 128; $4,470,000 in car expenses and transfers, with some of the money going to the named defendants, id. ¶ 130-131; $93,327 in "dividend payments on worthless preferred stock," id. ¶ 132; $1,941,188 for "of counsel" hires that were allegedly in violation of the D&O Defendants' corporate authority, id. ¶ 133; and $2,595,402.63 in personal expense payments authorized by Manzano for which Fiddler "received no value in return," id. ¶ 134.  For their part, the D&O Defendants filed ten claims against the estate totaling $940,991.  Id. ¶ 135.

---

³ This name refers to Jose Julian Álvarez, Charles A. Bimbela, Ricardo L. Ortiz-Colón, and José A. Sosa-Lloréns.  Id. at 3 n.2.

[4]

**B.   Procedural History**

On May 16, 2017, Fiddler filed a petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Puerto Rico, docketed as Bankr. Pet. No. 17-03403-MCF7.  Almost two years later, on May 14, 2019, the Trustee filed an adversary complaint in the Bankruptcy Court, docketed as Adv. Proc. No. 19-00327-EAG.

In her complaint, the Trustee asserted claims against nine of Fiddler's former directors and officers for breach of fiduciary duties, avoidable transfers, recission of transfers, and challenges to their claims as creditors.  Adv. Compl. ¶¶ 202-278.[4]  The Trustee's complaint concluded by demanding a jury trial and refusing consent to a jury trial before the Bankruptcy Court.  Id. at 69.  On September 23, 2019, the Bankruptcy Court recommended that the reference be withdrawn.  ECF No. 40.  This Court withdrew the reference in full following a hearing on October 7, 2019.  Minute Order, ECF No. 55.

Several of the D&O Defendants filed motions to dismiss or joined the motions of others.  ECF Nos. 64-37, 64-70, 64-71, 64-72, 64-74, 64-78, 64-81.  Four D&O Defendants -- José Julián

---

[4] The Trustee also brought claims against Fiddler's former insurance company and insurance broker related to a disputed insurance policy for director-and-officer liability, but those claims are not at issue in the present motions to compel arbitration.

Álvarez, Charles A. Bimbela, Ricardo L. Ortiz-Colón, and Juan C. Pérez Otero (collectively, "Álvarez") -- also filed or joined a motion to compel arbitration. Defs.' R. 12(b)(6) Mot. Dismiss Alt. Compel Arbitration Dismiss Stay Proceedings ("Álvarez's Mot. Dismiss"), ECF No. 64-70; Mot. Joinder "Defs.' R. 12(b)(6) Mot. Dismiss Alt. Compel Arbitration Dismiss Stay Proceedings" ("Ortiz's Mot. Joinder"), ECF No. 64-78; Mot. Joining Co-Defs.' Mot. Dismiss (Docket Nos. 124, 159, 163, 167) ("Pérez Otero's Mot. Joinder"), ECF No. 64-81. The Trustee and these defendants then traded replies. Trustee's Omnibus Response Opp'n Defs.' Mots. Dismiss Adv. Compl. ("Trustee's Response"), ECF No. 64-93; Defs.' Reply Pl.'s Opp'n Mot. Dismiss ("Álvarez's Reply"), ECF No. 65-8.

At a hearing on October 18, 2019, this Court denied the ripe motions to dismiss (excepting the claims falling outside the statutory time limits) and took the motions to compel arbitration under advisement. Minute Order, ECF No. 67.[5] For the reasons that follow, the Court DENIES the motions to compel arbitration.

---

[5] However, the Court allowed the motions to dismiss of Carmen Juarbe and Janet Navarrete (along with their respective conjugal partnerships). The Court further allowed Ricardo L. Ortiz-Colón's motion to dismiss for lack of personal jurisdiction but permitted the Trustee to properly serve process on him, which the Trustee has now done, ECF No. 75. Thus, the Court now has personal jurisdiction over Ortiz-Colón.

[6]

**II. ANALYSIS**

The defendants argue that some of the Trustee's claims are covered by a binding arbitration clause contained in Fiddler's by-laws.  Álvarez's Mot. Dismiss 31-39; Ortiz's Mot. Joinder 2.  Fiddler's by-laws ("By-Laws") are attached as Exhibit 3 to Manzano's Motion to Dismiss, ECF No 64-37.  The Trustee replies that she is not bound by the arbitration agreement and that the claims in the complaint are outside the arbitration agreement's scope.  Trustee's Response 34-39.[6]  This Court agrees with the Trustee that she is not so bound with respect to her creditor-derivative claims against the D&O Defendants.  In addition, the Court rules that the language of the arbitration clause does not cover any of the claims at issue.

**A. Standard of Review**

In ruling on a motion to compel arbitration, this Court "draw[s] the relevant facts from the operative complaint and the documents submitted to the [Court] in support of the motion to compel arbitration." Cullinane, 893 F.3d at 55.  Although, "[t]he First Circuit Court of Appeals has yet to address the

---

[6] In passing, the Trustee also projects some skepticism about the veracity and validity of the document presented as Fiddler's By-Laws.  Trustee's Response 34 n.16, 35-36.  Due to this Court's conclusion that the arbitration clause as presented by the D&O Defendants does not bind the Trustee as to these claims, the Court assumes for purposes of this Memorandum and Order that the document is verified and valid.

precise standard of review for a motion to compel arbitration," Johnson & Johnson Int'l v. Puerto Rico Hosp. Supply, Inc., 258 F. Supp. 3d 255, 259 (D.P.R. 2017) (Besosa, J.), courts in this and other circuits "have consistently applied a summary judgment standard to these types of motions," Commonwealth Equity Servs., LLC v. Ohio Nat'l Life Ins. Co., No. 18-cv-12314-DJC, 2019 WL 1470131, at *1 (D. Mass. Apr. 3, 2019) (Casper, J.) (citing Johnson & Johnson Int'l, 258 F. Supp. 3d at 259; Pelletier v. Yellow Transp., Inc., 503 F. Supp. 2d 397, 399 (D. Me. 2007), aff'd, 549 F.3d 578 (1st Cir. 2008)).  Accordingly, the Court will grant the motion "only if the record discloses no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law." Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013) (citing Fed. R. Civ. P. 56(a)).

Generally speaking, "[t]o compel arbitration, the movant[s] must demonstrate 'that a valid agreement to arbitrate exists, that [they are] entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Patton v. Johnson, 915 F.3d 827, 833 (1st Cir. 2019) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)).  The Trustee focuses her objections on the final two elements, arguing that she is not bound by the arbitration agreement and that the claims in

the complaint are not within the arbitration agreement's scope. Trustee's Response 34-39.

### B. The Trustee Is Not Bound by the Arbitration Clause for Creditor-Derivative Claims

Álvarez points to a clause in Fiddler's By-Laws requiring arbitration of certain claims. Álvarez's Mot. Dismiss 33. The arbitration clause is found in Article VI.A of the By-Laws, and reads in relevant part: "In the event of a controversy or claim arising out of the Corporate Documents which cannot be settled by the Shareholders or their legal representatives, it shall be settled through binding arbitration . . . ." Mot. Dismiss, Ex. 3, By-Laws of Fiddler Gonzalez & Rodriguez, PSC ("By-Laws") 23, ECF No. 64-37. The term "Corporate Documents" is defined as "the Certificate of Incorporation, By-Laws, and any other corporate governance document of [Fiddler]," id. 2, and "Shareholder" is defined as "a shareholder of [Fiddler]," id. 3.

The Supreme Court has explained that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986) (citation omitted). Thus, "courts should be extremely cautious about forcing arbitration in 'situations in which the identity of the parties who have agreed to arbitrate

[9]

is unclear.'" InterGen, 344 F.3d at 143 (quoting McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994)).

Here, the Trustee appears to argue that Fiddler's By-Laws are a contract among the shareholders only, to which Fiddler itself (and the Trustee by extension) is not bound. Trustee's Response 34-35 (quoting Centaur Partners, IV v. National Intergroup, Inc., 582 A.2d 923, 928 (Del. 1990)) ("Corporate charters and by-laws are contracts among the shareholders of a corporation and the general rules of contract interpretation are held to apply."). The Trustee buttresses her argument by citing Article 6.B of Fiddler's By-Laws, which states: "All provisions of the Corporate Documents shall be binding upon, and be of benefit to, each Shareholder . . . ." Id. 35 (emphasis deleted).

To the extent the Trustee's argument is that Fiddler is not bound by its own By-Laws, the Court disagrees. It is elementary that corporations "are bound by and must comply with" their by-laws. Flood v. ClearOne Commc'ns, Inc., 618 F.3d 1110, 1125 (10th Cir. 2010) (Gorsuch, J.) (quoting 8 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 4197, at 802-04 (rev. vol. 2010)). Although Fiddler's By-Laws refer to "each Shareholder" being bound by them, that ought not be read to exclude the corporation itself, which surely must follow its own laws. The arbitration clause does not exempt Fiddler

itself from the obligation to arbitrate disputes that arise out of the firm's corporate governance documents.

Whether the Trustee must obey Fiddler's arbitration clause, however, is another matter.  A leading treatise states that "because the trustee . . . steps into the shoes of the debtor, it has been generally held . . . that if the debtor could be compelled to arbitrate, so too could the trustee."  3 Collier on Bankruptcy ¶ 323.02[1] (Richard Levin & Henry J. Sommer eds., 16th ed. 2019); see, e.g., Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1153 (3d Cir. 1989) (holding "that the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and that the trustee-plaintiff is bound by the clause to the same extent as would the debtor").  A trustee and debtor, however, are not mere "alter egos of each other."  In re Buckeye Countrymark, Inc., 251 B.R. 835, 840 (Bankr. S.D. Ohio 2000) (citation omitted).  Rather, the trustee is a freestanding statutory creation -- "the representative of the estate."  11 U.S.C. § 323(a).  In this capacity, the trustee "owes a fiduciary duty to debtor and creditors alike to act fairly and protect their interests."  In re WHET, Inc., 750 F.2d 149, 149 (1st Cir. 1984) (per curiam) (citing Citibank N.A. v. Andros, 666 F.2d 1192, 1194 (8th Cir. 1981)).  Thus, the creditors' interests must also be considered.  See Allegaert v. Perot, 548 F.2d 432, 436 (2d Cir. 1977)

(refusing to enforce a debtor's arbitration clause in the context of "statutory causes of action belonging to the trustee, not to the bankrupt," that were asserted "for the benefit of the bankrupt's creditors").

The sensible way to navigate the trustee's complex identity is the standard most courts accept: a trustee may be forced to arbitrate only those "claims that are derived from the rights of the debtor," but not "creditor claims that the Code authorizes the trustee to assert on their behalf." Hays & Co., 885 F.2d at 1154-55. With this distinction in mind, counts XI (action to avoid avoidable transfers), XII (recission of transfers), XIII (disallowance of claims), and XIV (subordination of filed proofs of claims), Adv. Compl. ¶¶ 247-276, are derivative of the creditors, not the debtor. See Hays & Co., 885 F.2d at 1155 ("Claims asserted by the trustee under section 544(b) are not derivative of the bankrupt."); In re Salander-O'Reilly Galleries, LLC, 475 B.R. 9, 24 (S.D.N.Y. 2012); Strong v. Geringer, No. 2:15-CV-00837-TC, 2016 WL 4926175, at *1, *4-5 (D. Utah Sept. 15, 2016) (holding that a trustee's disallowance and subordination claims were derivative of the creditors and not subject to the debtor's arbitration clause). Therefore, the Court rules that the Trustee is not bound by Fiddler's arbitration clause with respect to those counts, even were those claims to fall within the terms of the arbitration agreement.

In counts IX and X, however, the Trustee alleges breaches of fiduciary duty. Adv. Compl. ¶¶ 217-246. These claims are derivative of the debtor, not the creditors. See North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 103 (Del. 2007) (holding "that individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate directors," but "[c]reditors may nonetheless protect their interest by bringing derivative claims on behalf of the insolvent corporation") (emphasis deleted); Segarra-Miranda v. Perez-Padro, 482 B.R. 59, 65-66 n.6 (D.P.R. 2012) (Casellas, J.) (citing Gheewalla in the context of Puerto Rico corporate law); Wiley v. Stipes, 595 F. Supp. 2d 179, 185 (D.P.R. 2009) (Gelpi, J.) (looking to Delaware corporate law for support "[b]ecause Puerto Rico corporate law was modeled after Delaware corporate law" (citing Gonzales Turul v. Rogatol Distributors, Inc., 951 F.2d 1, 3 n.4 (1st Cir. 1991))).

Because the Trustee's claims for breach of fiduciary duty are derivative of the debtor, not the creditors, Fiddler's arbitration clause is controlling. Accordingly, the Court must decide if these claims fall within the terms of the clause.

**C.   The Arbitration Clause Does Not Cover These Claims**

The Trustee next argues that the claims in her complaint are not within the scope of the arbitration agreement, which

[13]

covers any "controversy or claim arising out of the Corporate Documents." Trustee's Response 36-39 (quoting By-Laws, Article VI.A). "Corporate Documents" are defined in Article I.C of the By-Laws as "the Certificate of Incorporation, By-Laws and any other corporate governance document of the Corporation." By-Laws 2. The question, then, is whether any of the Trustee's claims "aris[e] out of" the By-Laws or other Fiddler corporate governance documents.

To determine the scope of an arbitration clause, the Court must "focus on the factual allegations underlying [the] claims in the [c]omplaint." Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 7 (1st Cir. 2014) (alteration in original) (citation omitted). Federal law establishes a rebuttable presumption that ambiguity in the scope of an arbitration clause be resolved in favor of arbitration. Id. Rebutting that presumption requires "show[ing] that the parties intended to exclude this type of dispute from the scope of the arbitration clause, not merely that the arbitration clause lacked explicit language covering [the plaintiff's] claims." Id. at 8-9 (citation omitted).

First Circuit precedent teaches that not all arbitration clauses are created equal. An arbitration clause with catch-all language like "arise out of or relate to [the contract]" is especially broad, mandating arbitration when a dispute "likely

[14]

will have to be resolved by reference to the [a]greement" or even "relate . . . to the relationship established . . . under the [a]greement." Id. at 8. Even then, the broadly worded clause has an outer limit. See Combined Energies v. CCI, Inc., 514 F.3d 168, 172-73 (1st Cir. 2008) (holding that an "arise out of, or relate to" arbitration clause did not cover allegations that "reverberate[d] far beyond the [agreement] and would stand regardless of the parties' rights and responsibilities as defined by that contract"). In contrast, arbitration clauses with narrower wording naturally do not reach so far. Thus, the First Circuit interpreted a clause mandating arbitration of "[a]ll problems arising out of grievances or out of the application or interpretation of this [a]greement or the performance of any party under it" as "reflect[ing] the parties' agreement to arbitrate any dispute involving construction of the substantive provisions of the contract." International Bhd. of Elec. Workers, Local 1228 v. Freedom WLNE-TV, Inc., 760 F.2d 8, 11 (1st Cir. 1985).

    Fiddler's arbitration clause is of this narrower kind, covering only any "controversy or claim arising out of the Corporate Documents" -- sans the sweeping adjunct "or relating to." The plain reading of this arbitration clause under First Circuit precedent is that it encompasses only disputes involving construction of the substantive provisions of Fiddler's

[15]

corporate governance documents.  Although the Trustee alleges breaches of fiduciary duty against several defendants, there is no dispute over the construction of any provision in Fiddler's corporate governance documents.

The D&O Defendants do allege that they are protected by an immunity provision in Fiddler's Certificate of Incorporation. Álvarez's Mot. Dismiss 6-8.  The Trustee does not dispute anything concerning that immunity provision; instead, she alleges that the D&O Defendants breached their duties of loyalty and good faith and derived improper personal benefit, and such acts are expressly excluded from the immunity provision's protection.  <u>See</u> Adv. Compl. ¶¶ 225-226, 240-241; Trustee's Response 31-32 (citing P.R. Laws ann. tit. 14, § 3502(6)).  The dispute between the Trustee and the D&O Defendants turns entirely on the substantive truth and legal effect of the Trustee's allegations, not on any question about the meaning of the Certificate of Incorporation or the By-Laws.  Such a dispute does not "aris[e] out of" Fiddler's corporate governance documents.  In addition, although the Court has already explained that the Trustee is not bound by Fiddler's arbitration clause with respect to her creditor-derivative claims against the D&O Defendants (counts XI-XIV), the Court further rules that those claims also do not arise out of the corporate governance documents.

Finally, due to the Court's conclusion that the arbitration clause does not encompass the Trustee's claims, it is unnecessary to resolve any potential conflict between the Federal Arbitration Act and the Bankruptcy Act.  Cf. Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987) (explaining that the Federal Arbitration Act may not apply to a statutory right when there is "an inherent conflict between arbitration and the statute's underlying purposes"); MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 108 (2d Cir. 2006) (quoting Societe Nationale Algerienne Pour La Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp., 80 B.R. 606, 610 (D. Mass. 1987) (describing the Bankruptcy Act and Federal Arbitration Act as presenting conflicts of "near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach toward dispute resolution")).

## III. CONCLUSION

The D&O Defendants seek to compel the Trustee to arbitrate her claims against them based on an arbitration clause in the debtor's by-laws.  The Court DENIES the motions to compel arbitration for two reasons.  First, counts XI-XIV are creditor-derivative claims for which the Trustee is not bound by the debtor's arbitration agreement.  Second, none of the claims

against the D&O Defendants are covered by the language in the arbitration clause because they do not arise out of the debtor's corporate governance documents.

**SO ORDERED.**

                                                      _/s/ William G. Young___
                                                     WILLIAM G. YOUNG
                                                     DISTRICT JUDGE